FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 09, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENDRA K.,[1]<br>               Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>               Defendant. | No. 2:18-cv-00226-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite her limitations, 20 C.F.R. § 404.1545(a)(1),

is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that she performed in the past

(past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of

performing past relevant work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such

work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education, and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 11, 2014, Plaintiff applied for Title II disability insurance benefits alleging an amended disability onset date of October 28, 2008. Tr. 44, 246-48. The application was denied initially, Tr. 118-124, and on reconsideration, Tr. 126-30. Plaintiff appeared before an administrative law judge (ALJ) on November 30, 2016. Tr. 40-100. On June 9, 2017, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity from her October 28, 2008 alleged onset date through her date of last insured of June 30, 2010. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: mild degenerative disc disease of the lumbar spine; status-post right shoulder rotator cuff repair; osteoarthritis of the knees, bilaterally; status-post arthroscopic surgery on the right; and obesity. Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 20.  The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> She could lift and carry 20 pounds occasionally and up to 10 pounds frequently.  She could stand and walk for a total of 6 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday with normal breaks.  She had the ability to reach overhead with the right upper extremity on an occasional basis.  She should avoid climbing ladders, ropes, and scaffolds and avoid unprotected heights.

Tr. 21.

At step four, the ALJ found Plaintiff was incapable of performing past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as router, storage facility rental clerk, and assembler (small products II).  Tr. 24.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from October 28, 2008, though June 30, 2010, the date of last insured.  Tr. 26.

On May 21, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly considered the opinion of Alan Colledge, M.D. ECF No. 16 at 9-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight

ORDER - 8

than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Colledge treated Plaintiff once in 2003, once in 2005, and twice in 2009. Tr. 795-96, 800-802, 819-20. In 2009, Dr. Colledge diagnosed Plaintiff with fibromyalgia, chronic pain syndrome, hyper analgesia, and obesity. Tr. 795, 802.

In February 2009, Dr. Colledge noted under the "Discussion" section of the clinic notes that he "suggested an MRI for a more definitive disposition as to what her problem is and what we can do to help her" and "[s]trict precautions."  Tr. 802.

The ALJ did not assign weight to Dr. Colledge's "Discussion" suggestions. Tr. 23-24.  An ALJ is not required to provide clear and convincing reasons for rejecting statements within medical records when those records do not reflect physical or mental limitations or otherwise provide information about the ability to work.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that where a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.").  Here, the ALJ found that Dr. Colledge's "[s]trict precautions" notation, along with other notations in the February 10, 2009 medical note, did not contain functional limitations and therefore did not constitute a medical opinion.  Tr. 23.  Plaintiff contends Dr. Colledge provided sufficient information in his 2005 and 2009 findings for his

"strict precautions" suggestion to constitute a functional limitation indicating that she cannot work on a regular and continuous basis consistent with full-time work. ECF No. 16 at 10. Yet, neither Dr. Colledge's 2005 nor 2009 clinic notes contain functional limitations. Moreover, it is unclear what Dr. Colledge meant as to "[s]trict precautions," particularly given that, although Dr. Colledge believed that Plaintiff was recently hired at Wal-Mart and had previously filled out a work-services form for Plaintiff in 2005, Dr. Colledge did not recommend any specific functional limitations for her employment either in his February 2009 clinic note, March 2009 clinic note, or other document of record. Tr. 795-96, 800-02. In addition, the ALJ rationally found that Dr. Colledge's note of a positive straight leg raise was insufficient to establish a functional limitation, particularly when Dr. Colledge reported that Plaintiff's gait and strength were normal on examination, Tr. 800-01, and an MRI did not indicate any nerve root involvement, Tr. 798. Tr. 23-24. While the February 2009 MRI[2] of the lumbar spine revealed mild degenerative facet arthritis at L3-4, L4-5, and L5-S1 and degenerative disc disease, Tr. 798, the April 2009 whole body scan revealed that the cervical, thoracic, and

---

[2] The ALJ and the medical expert identified the February 2009 MRI as occurring in December 2009. Tr. 19, 55, 798. This erroneous date has no impact on the reasonableness of the ALJ's decision as both dates are within the relevant period.

ORDER - 11

lumbar spine were within normal limits, and only mild left acromioclavicular (AC) joint arthropathy was suspected, Tr. 791. When Dr. Colledge's clinic notes of record, and related imaging, are considered cumulatively, the ALJ rationally did not consider Dr. Colledge's February 2009 clinic note to contain a medical opinion about Plaintiff's functional limitations. *See Turner*, 613 F.3d at 1223.

Moreover, to the extent that Dr. Colledge's February 2009 recommendation for "strict precautions" could be interpreted as a medical opinion as to Plaintiff's functional limitations, the ALJ provided specific and legitimate reasons for discounting Dr. Colledge's findings and construed opinion. Tr. 23-24. First, as was discussed *supra*, the ALJ found that Dr. Colledge's diagnosis of fibromyalgia was not supported by appropriate medical evidence as required by SSR 12-2p. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (recognizing that the ALJ is to consider whether the physician's findings are supported by the record); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (identifying relevant factors to evaluating any medical opinion as the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record). Second, the ALJ determined that Dr. Colledge's note that Plaintiff's range of motion was "markedly" limited was unclear, and furthermore that it most likely related to Plaintiff's back, and that Dr. Colledge did not translate this range-of-

motion limitation into any functional limitation.  Tr. 23, 800-02; *see Bray*, 554

F.3d at 1228 ("[T]he ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings.").  Finally, the ALJ limited Plaintiff to light work with

additional postural limitations—limitations that Dr. Colledge did not even identify

as necessary for Plaintiff's anticipated work at Wal-Mart.  Tr. 800-02, 795-96.

Because the ALJ's findings as to Dr. Colledge were reasonable and supported by

substantial evidence, they are upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005) (recognizing that where the evidence is subject to more than one

rational interpretation, the ALJ's conclusion must be upheld).

**B. Step Two: Severe Impairments**

Plaintiff contends the ALJ erred at step two by failing to identify a number

of conditions as severe impairments.  ECF No. 16 at 10-12.

At step two of the sequential process, the ALJ must determine whether the

claimant suffers from a "severe" impairment, i.e., one that significantly limits her

physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  To

show a severe impairment, the claimant must first prove the existence of a physical

or mental impairment by providing medical evidence consisting of signs,

symptoms, and laboratory findings; the claimant's own statement of symptoms

alone will not suffice.  20 C.F.R. § 404.1521.  An impairment is non-severe if

"medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28 at *3. Therefore, an impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, reaching, carrying, handling, responding appropriately to supervision and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521 (2017); SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ concluded, as to the relevant period, that Plaintiff's mild degenerative disc disease of the lumbar spine; status-post right shoulder rotator cuff repair; osteoarthritis of the knees, bilaterally; status-post arthroscopic surgery on the right; and obesity were severe impairments. Tr. 18. The ALJ also concluded that Plaintiff had the following non-severe impairments during the

relevant period: hypertension, gastroesophageal reflux disease, diabetes mellitus, headaches, asthma, gout, stomach ulcers, and fibromyalgia.  Tr. 18-20.  Plaintiff contends the ALJ should have determined the following conditions as severe impairments during the relevant period:  history of extensive foot surgery, scoliosis with concavity off to the left side at the thoracolumbar junction, left AC joint arthropathy, fibromyalgia, chronic pain syndrome, hyper analgesia, depression, neuropathy, and bilateral carpal tunnel syndrome.  ECF No. 16 at 11.

First, Plaintiff cites treatment notes where these conditions were diagnosed, observed, or reported. *Id.*  However, the "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Here, Plaintiff identifies no evidence in the record that these conditions had more than a minimal impact on her basic work abilities during the relevant period.  Plaintiff failed to establish that these conditions were severe impairments during the relevant period.

Second, Plaintiff argues the ALJ erroneously dismissed fibromyalgia as a severe impairment on the grounds that there was no formal examination or form determination as required by SSR 12-2p.  ECF No. 16 at 11-12.  There are two sets of criteria for diagnosing fibromyalgia in SSR 12-2p:  1) the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia ("1990 Criteria") and 2) the 2010 ACR Preliminary Diagnostic Criteria ("2010

ORDER - 15

Criteria").  Plaintiff does not challenge that she did meet the 1990 Criteria but rather submits that she satisfies the 2010 Criteria.  ECF No. 16 at 11-12.  The 2010 Criteria requires 1) a history of widespread pain, 2) evidence that other disorders that would cause the repeated manifestations of symptoms, signs, or co-occurring conditions were excluded, and 3) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.  SSR 12-2p at 3.  Plaintiff failed in her burden of identifying records that support a finding that she had repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions that were not caused by other disorders during the relevant period.  Therefore, the ALJ's finding that the diagnosed fibromyalgia was not supported by sufficient medical evidence during the relevant period to constitute a severe impairment as required by SSR 12-2p is rational and supported by substantial evidence.  Tr. 21, 23.

Moreover, as Plaintiff was found to have severe impairments, this case was not resolved at step two.  If there was any error in the ALJ's finding at step two, it is harmless as the symptoms of all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity.  Tr. 21. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Plaintiff fails to establish the medical evidence pertaining to the conditions mentioned during the relevant period create limitations not already accounted for in the RFC.  *See Shinseki*, 556

U.S. at 409-10 (recognizing that the party challenging the ALJ's decision bears the burden of showing harm). The ALJ rationally concluded that the medical evidence supported a light work restriction, along with other postural limitations, and that these restrictions sufficiently accounted for any waxing and waning of Plaintiff's conditions during the relevant period. There was no error in the step-two analysis.

## C. Plaintiff's Symptom Claims

Plaintiff contends the ALJ failed to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 16 at 12-17.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [her] impairment could reasonably be expected to cause the severity of the symptom [she] has alleged; [she] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient. The ALJ must identify what symptom

claims are being discounted and what evidence undermines these claims. *Id.*

(quoting *Lester,* 81 F.3d at 834). "The clear and convincing [evidence] standard is

the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

F.3d 920, 924 (9th Cir. 2002)).

 Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication the claimant took to alleviate pain or other

symptoms; 5) treatment, other than medication, the claimant received for relief of

pain or other symptoms; 6) any measures other than treatment the claimant used to

relieve pain or other symptoms; and 7) any other factors concerning the claimant's

functional limitations and restrictions due to pain or other symptoms. SSR 16-3p;

20 C.F.R. § 416.929(c)(1)-(3). The ALJ is instructed to "consider all of the

evidence in an individual's record" "to determine how symptoms limit ability to

perform work-related activities." SSR 16-3p.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms during the adjudicated period.  Tr. 22.

### 1. Inconsistent with Lack of Treatment

The ALJ discounted Plaintiff's symptom testimony because she received no treatment for her alleged carpal tunnel syndrome during the relevant period.  Tr. 22.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.  Here, the ALJ accepted Plaintiff's testimony that she did not have insurance during much of the relevant period.  Tr. 22.  However, the ALJ highlighted that, even though Plaintiff reported prior mild carpal tunnel syndrome in both hands, she identified her bilateral carpal tunnel syndrome symptoms as a new concern for her in a May 2012 medical report.  Tr. 733-37.  The ALJ's finding—that the record does not contain evidence of a diagnosis or treatment for carpal tunnel syndrome or

hand problems during the relevant period and therefore Plaintiff's reported hand symptoms during the relevant period were not as disabling as she claimed—is rational and supported by substantial evidence. This was a clear and convincing reason to discount Plaintiff's reported symptoms about her hands and any related attendance or concentration issues during the relevant period.

### 2. Inconsistent with Plaintiff's Employment Activities

The ALJ also discounted Plaintiff's testimony that her symptoms were disabling because such testimony was inconsistent with Plaintiff's employment activity during the relevant period. Tr. 22-23. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Working with an impairment supports a conclusion that the impairment is not disabling. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling). However, short-term work, which does not demonstrate the ability to sustain substantial gainful employment, may be considered an unsuccessful work attempt instead of substantial gainful activity. *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Here, the ALJ

found that Plaintiff was able to work for short periods of time during the relevant period, although not at substantial gainful activity wages, and that she was going to school shortly after her knee surgery in 2008. Tr. 23, 806 (noting that Plaintiff reported "going to school right now, trying to change careers where she does not have to be up on her feet so much. This will certainly help her in the long run"). The ALJ also highlighted records wherein Plaintiff stated she had difficulties finding a job since moving to Spokane in 2011, with no mention that she could not work due to physical or mental problems. Tr. 23, 575, 724. Plaintiff contends the ALJ mischaracterized her testimony and selectively focused on aspects of the record that tended to suggest non-disability. ECF No. 16 at 15. While a different rational conclusion could be made as to whether Plaintiff's reported symptoms during the relevant period were inconsistent with Plaintiff's work activities and desire to work, the ALJ's conclusion—that Plaintiff's attempts at employment and her lack of reporting an inability to work due to physical or mental disability to medical providers were inconsistent with her reported disabling symptoms during the relevant period—is rational and supported by substantial evidence. *See Burch*, 400 F.3d at 679; *Hill*, 698 F.3d at 1158. This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.

### 3. Inconsistent with the Objective Medical Evidence

Finally, the ALJ found Plaintiff's symptom testimony inconsistent with the objective medical record. Tr. 18-20, 22-23. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Contrary to Plaintiff's argument that the ALJ provided "little more than vague assertions that the objective medical evidence does not fully support" Plaintiff's testimony, ECF No. 16 at 14, the ALJ in this section of the decision referenced her prior detailed summary of the medical evidence. Tr. 22-23, 18-20. As to Plaintiff's physical conditions, the ALJ discussed that Plaintiff had arthroscopic partial medial meniscectomy of the right knee on October 28, 2008, and about two months after surgery was treated with an injection into both knees and advised about "appropriate activity level." Tr. 803. The following month, Plaintiff presented with a normal gait, leg strength, and range of motion. Tr. 800-02. The total body scan of April 2009 did not indicate any issues with Plaintiff's knees but indicated mild left AC Joint arthropathy. Tr. 791. An MRI during this same time period revealed mild degenerative facet

ORDER - 22

arthritis and degenerative disc disease. Tr. 798. The record is then void of medical evidence until March 2012—after the date last insured—when Plaintiff sought treatment for weight gain, bloating, and bowel issues. Tr. 611-15. This 2012 clinic note contains no discussion about Plaintiff's knee, back, shoulder, or hand conditions but instead states that Plaintiff is without edema and has toes with hammer deformities, callouses, and surgical scares. Tr. 611-15. On this record, the ALJ reasonably concluded that while the objective medical evidence revealed knee, back, shoulder, and hand conditions, the conditions during the relevant period were not as limiting as Plaintiff reported. Likewise, the ALJ reasonably concluded that the record did not support a mental health impairment during the relevant period. Tr. 19-20. These findings were supported by substantial evidence and were a clear and convincing reason to discount Plaintiff's symptom complaints.

### D. Step Five

Plaintiff faults the ALJ for relying on vocational-expert testimony that relied on an incomplete hypothetical and thereby contends the ALJ did not incorporate all of Plaintiff's restrictions into the RFC, particularly her need for occasional handling, fingering, and feeling and that she would be absent three to four days per month and off task 15 percent or more of the workday. ECF No. 16 at 17-18. Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering Plaintiff's symptom claims and the medical opinion evidence. *Id*. For

reasons discussed *supra*, the ALJ's consideration of Plaintiff's symptom claims and the medical opinion evidence during the relevant period is legally sufficient and supported by substantial evidence. The ALJ crafted an RFC that contained several limitations, including requiring that Plaintiff be limited to light work, occasional overhead reaching with the right upper extremity, and other postural limitations. Tr. 21. The ALJ did not err in crafting the hypothetical or the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 9, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24